UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETRA MILIAN,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>　　　　　　Defendant. | Case No. EDCV 09-1637 JC<br><br>MEMORANDUM OPINION |

## I.   SUMMARY

On September 11, 2009, plaintiff Petra Milian ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 16, 2009, Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 6, 2006, plaintiff filed an application for Supplemental Security Income benefits. (Administrative Record ("AR") 236). Plaintiff asserted that she became disabled on June 1, 2006, due to kidney problems. (AR 221, 236, 338). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) on November 7, 2008 ("Pre-Remand Hearing"). (AR 615-31).

On February 3, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision ("Pre-Remand Decision"). (AR 236-43). The Appeals Council denied plaintiff's application for review of the Pre-Remand Decision. (AR 287).

As noted above, plaintiff filed the instant action on September 11, 2009. On November 17, 2009, pursuant to the parties' stipulation and for cause shown, this Court remanded the case pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative action; Significant portions of the audio recording of the Pre-Remand Hearing could not be transcribed because they were inaudible. (AR 221 n.1, 290-92). The Appeals Council, in turn, remanded the case to the ALJ for a *de novo* hearing. (AR 221, 293-95). On August 13, 2008, the ALJ held a post-remand hearing ("Post-Remand Hearing") during which the ALJ heard testimony

///

---

[1] The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

from plaintiff (who was represented by counsel) and a vocational expert. (AR 632-45).

On October 21, 2010, the ALJ issued a decision, incorporating by reference the Pre-Remand Decision, and supplementing such decision. (AR 221-32). The ALJ again determined that plaintiff was not disabled through the date of the decision ("Post-Remand Decision"). (AR 221). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairment: substance abuse induced mood disorder (AR 223); (2) plaintiff suffered from the following non-severe impairments: post-open reduction internal fixation of the ankle and obesity (AR 224); (3) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 224-25); (4) plaintiff retained the residual functional capacity to perform medium work (20 C.F.R. § 416.967(c)) with additional limitations[2] (AR 225); (5) plaintiff could perform her past relevant work as an office cleaner and a warehouse person (AR 230); (6) in the alternative, there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically laundry worker and hand packager (AR 230-31); and (7) plaintiff's allegations regarding her limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (AR 226-27).

On March 23, 2011, the Court ordered the instant action reopened in accordance with the parties' stipulation. (Docket Nos. 17-18).

III. **APPLICABLE LEGAL STANDARDS**

    A. **Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically

---

[2]The ALJ determined that plaintiff could perform medium work, but was limited to routine, repetitive, entry level work that is minimally stressful with no contact with the public and only superficial interpersonal contact with co-workers and supervisors. (AR 225).

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

///

1  Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
2  Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).
3        The claimant has the burden of proof at steps one through four, and the
4  Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262
5  F.3d 949, 954 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
6  (claimant carries initial burden of proving disability).

    **B.**    **Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

**IV.**    **DISCUSSION**

    **A.**    **The ALJ Properly Evaluated the Medical Evidence**

        **1.**    **Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish

among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

       The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by

---

[3] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1  setting out detailed and thorough summary of facts and conflicting clinical
2  evidence, stating his interpretation thereof, and making findings) (citations and
3  quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite
4  "magic words" to reject a treating physician opinion – court may draw specific and
5  legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his
6  conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must
7  set forth his own interpretations and explain why they, rather than the
8  [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the
9  treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599,
10 602 (9th Cir. 1989).  These standards also apply to opinions of examining
11 physicians.  See Andrews v. Shalala, 53 F.3d 1035, 1042-44 (9th Cir. 1995).

### 2. Pertinent Facts

An Operative Note dictated by Dr. Sam Chen reflects that on January 17, 2008, plaintiff underwent surgery to repair a left ankle injury, specifically "[l]eft ankle medial and lateral malleolar open reduction and internal fixation" with "syndesmotic repair." (AR 582-83).

In a February 1, 2008 Medical Report ("2008 Medical Report"), an unidentified San Bernardino County physician[4] opined as follows: (i) plaintiff was status post open reduction internal fixation with syndesmotic repair; (ii) plaintiff was precluded from any weight bearing activity on her left lower extremity and would need removal of one ankle screw within three months (after the surgery); (iii) plaintiff could perform no work; and (iv) the probable duration of plaintiff's incapacity would be from January 17, 2008 to April 14, 2008. (AR 417).

///

---

[4] Plaintiff does not identify the name of the physician who prepared the February 1, 2008 Medical Report, and the signature at the bottom of the report is illegible. (AR 417; Plaintiff's Motion at 3).

On June 30, 2009, Dr. Bunsri T. Sophon, a board-certified orthopaedic surgeon, conducted a Complete Orthopedic Evaluation of plaintiff which included a physical examination. (AR 516-20). Plaintiff told Dr. Sophon that she received an injury to her left ankle and knee when she was kicked by an animal in December 2008, and that she underwent surgery to repair the ankle injury. (AR 516). Dr. Sophon's examination of plaintiff's lower extremities reflected a range of motion within normal limits. (AR 519). Dr. Sophon opined that plaintiff had "[no] significant physical impairment" and "no functional limitations." (AR 520).

On May 3, 2010, Dr. Terrance Flanagan, a consultative physician, conducted a Complete Orthopedic Evaluation of plaintiff which included a physical examination. (AR 536-40). Dr. Flanagan opined that (i) plaintiff complained of left ankle pain; (ii) such pain was "secondary to sequelae of previous fibular fracture with development of osteoarthritis at the ankle joint" and is not an uncommon result of plaintiff's ankle injury; (iii) plaintiff had osteoarthritis in the left ankle; but (iv) there was no evidence of "ongoing ligamentous instability." (AR 540).

### 3. Analysis

Plaintiff argues that a reversal or remand is warranted essentially because the ALJ failed properly to consider the opinions expressed in the 2008 Medical Report, specifically (1) the "physician's opinion of disability"; and (2) that plaintiff was precluded from any weight bearing activity on her left lower extremity. (Plaintiff's Motion at 3-6). The Court disagrees.

First, the ALJ was not required to provide any explanation for rejecting the physician's conclusory "opinion of disability" (*i.e.*, that plaintiff could do "[n]o [w]ork" for the period of January 17, 2008 to April 14, 2008). See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (An ALJ must provide an explanation only when he rejects "significant probative evidence.") (citation omitted). A conclusory opinion that plaintiff was unable to work is not binding on

the Commissioner. See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008)[5] ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); 20 C.F.R. § 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Moreover, the 2008 Medical Report reflected that any period of temporary incapacity caused by plaintiff's ankle surgery was expected to last no more than three months – which does not satisfy the twelve-month duration requirement for proving disability. See Burch, 400 F.3d at 679 (a claimant must show "that she is unable to 'engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'") (citing 42 U.S.C. § 423(d)(1)(A)).

Second, the ALJ was also entitled to disregard the opinion that plaintiff was completely precluded from weight bearing activity on her left lower extremity. Such extreme limitation appears to apply only during the three month period of temporary disability stated in the 2008 Medical Report which, again, does not satisfy the twelve-month duration requirement. To the extent plaintiff suggests that such limitation lasted beyond the stated "probable duration of incapacity"

---

[5] Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

(*e.g.*, more than three months), the ALJ rejected such a suggestion for specific and legitimate reasons based on substantial evidence in the record. As the ALJ noted, plaintiff points to no objective evidence in the record which reflects that plaintiff was completely unable to do weight bearing activity on her left lower extremity for any continuous period of twelve months or more following her ankle surgery.[6] (AR 224). To the contrary, as the ALJ noted, Dr. Sophon concluded that plaintiff had "[no] significant physical impairment" and "no functional limitations," and Dr. Flanagan opined that there was "no evidence of ongoing ligamentous instability." (AR 228) (citing Exhibit B15F at 5 [AR 520]; Exhibit B20F at 5 [AR 540]). The opinions of Drs. Sophon and Flanagan were supported by each physician's independent examination of plaintiff, and thus constituted substantial evidence supporting the ALJ's decision. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews, 53 F.3d at 1041.

Finally, to the extent plaintiff claims that the ALJ failed to account for exertional limitations related to crepitus[7] and pain stemming from plaintiff's ankle injury (Plaintiff's Motion at 4-6), plaintiff's claim is belied by the record. The

---

[6]Plaintiff alleges that the ALJ "misrepresented the evidence" by stating that "there is no evidence showing any post-surgical problems," even though plaintiff testified that she "has arthritis in her ankle after she fractured it in January 2008 and . . . still wraps the ankle and takes medication for the aching and throbbing." (Plaintiff's Motion at 4). Contrary to plaintiff's assertion, however, the ALJ stated that there was no "<u>objective</u> evidence showing any post-surgical problems" (*e.g.*, evidence other than plaintiff's subjective symptoms) (AR 224). Nonetheless, to the extent the ALJ inadvertently mischaracterized the evidence, any error was harmless. As discussed above, plaintiff points to no medical opinion which reflects that plaintiff was completely unable to engage in weight bearing activity on her left lower extremity for any continuous period of twelve months or more after her ankle surgery.

[7]"Crepitus [is] a crunchy sound or feeling when the tendon is used [which] . . . is usually uncomfortable or painful." See Tendon Injury (Tendinopathy) – Symptoms, WebMD website available at http://firstaid.webmd.com/tc/tendon-injury-tendinopathy-symptoms.

ALJ concluded that although plaintiff's ankle injury was "not severe," when considered with plaintiff's other non-severe impairment (*i.e.* obesity), the ankle injury could reasonably be expected to cause "some exertional limitations" which the ALJ "adequately consider[ed]" in his residual functional capacity assessment for plaintiff which limited plaintiff to medium work. (AR 224-25). While plaintiff suggests that such limitations are evidence that she is unable to sustain full time competitive employment, this Court will not second-guess the ALJ's reasonable interpretation that it is not, even if such evidence could give rise to inferences more favorable to plaintiff. Cf. Ukolov, 420 F.3d at 1005 ("[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.") (citation omitted).

Accordingly, plaintiff is not entitled to a reversal or remand on this basis.

### B. The ALJ Properly Evaluated the Severity of Plaintiff's Impairments

#### 1. Pertinent Law

At step two of the sequential evaluation process, plaintiff has the burden to present evidence of medical signs, symptoms and laboratory findings[8] that

---

[8] A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov, 420 F.3d at 1005 (quoting Social Security Ruling ("SSR") 96-4p at *1 n.2) (Social Security rulings are binding on the Administration. See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990). Such rulings reflect the official interpretation of the Social Security Administration and are entitled to some deference as long as they are consistent with the Social Security Act and regulations. Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir. 2007)). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p at *1 n.2); see also 20 C.F.R. § 416.928(a)-(b). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." Ukolov, 420 F.3d at 1005 (citation omitted); SSR 96-4p at *1-2 ("[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.").

establish a medically determinable physical or mental impairment that is severe, and that can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)); see 20 C.F.R. §§ 404.1520, 416.920. Substantial evidence supports an ALJ's determination that a claimant is not disabled at step two where "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment." Id. (quoting SSR 96-4p, 1996 WL 374187, at *1-*2).

Step two is "a de minimis screening device [used] to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996). Applying the normal standard of review to the requirements of step two, a court must determine whether an ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citation omitted); see also Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) ("Despite the deference usually accorded to the Secretary's application of regulations, numerous appellate courts have imposed a narrow construction upon the severity regulation applied here."). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (citation omitted).

### 2. Additional Pertinent Facts

In the March 14, 2008 notes of an initial psychiatric evaluation of plaintiff by plaintiff's treating physician, Dr. Thuy Huynh Nguyen ("2008 evaluation notes"), a mental status examination reflected, *inter alia*, that plaintiff had (i) dramatic facial and hand gestures; (ii) inappropriate laughter and talked/smiled/laughed to self; (iii) rapid, pressured and loud speech; (iv) an

anxious and labile mood/affect; (v) loose, tangential, circumstantial, disorganized, paranoid/persecutory and grandiose thoughts, flight of ideas and thought blocking; and (vi) poor insight and judgment. (AR 440, 443). Dr. Nguyen diagnosed plaintiff with schizoaffective disorder – bipolar type, alcohol abuse, rule out methamphetamine abuse, and assigned plaintiff a global assessment of functioning ("GAF") rating[9] of 35-40. (AR 443).

On April 23, 2009, Dr. K. Gregg, a non-examining, state agency physician, reviewed plaintiff's medical records and completed a Psychiatric Review Technique form in which the doctor opined that plaintiff had (i) no restriction of activities of daily living; (ii) no difficulties in maintaining social functioning; (iii) no difficulties in maintaining concentration, persistence or pace; and (iv) no repeated episodes of decompensation of extended duration. (AR 499, 507). Accordingly, Dr. Gregg concluded that plaintiff's mental condition was not severe. (AR 499, 509).

In a July 7, 2009 Case Analysis – Psych form, Dr. Gregg referenced medical records which contained mental status examinations from May 30, 2008 (AR 432), October 14, 2008 (AR 419), and April 3, 2009 (AR 496) that were for the most part unremarkable. (AR 523). Dr. Gregg reiterated that plaintiff's mental condition was not severe. (AR 524).

On October 5, 2009, Dr. H. Amado, a state agency physician, reviewed plaintiff's medical records on reconsideration, and affirmed the assessment that

---

[9]A GAF score is a clinician's judgment of an individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score between 31 and 40 indicates "[s]ome impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV at 34.

plaintiff's mental condition was not severe. (AR 534-35). Dr. Amado referenced additional medical records which contained mental status examinations of plaintiff from May 12, 2009 (AR 510), June 8, 2009 (AR 533) and July 13, 2009 (AR 531) that suggest plaintiff's mental state significantly improved over only a three month period while plaintiff was compliant with her prescribed medication and had remained sober. (AR 535).

On December 16, 2009, Dr. Nguyen reviewed a Work Capacity Evaluation (Mental) form plaintiff had completed on her own and noted on the form his own opinions regarding the degree of plaintiff's mental impairment (collectively "2009 opinions"). Specifically, Dr. Nguyen opined that plaintiff:

> (A) had slight limitation in her ability to (i) remember locations and work-like procedures; (ii) understand, remember and carry out very short and simple instructions; (iii) make simple work-related decisions; and (iv) ask simple questions or request assistance;
>
> (B) had slight to moderate limitation in her ability to be aware of normal hazards and take appropriate precautions;
>
> (C) had moderate limitation in her ability to (i) accept instructions and respond appropriately to criticism from supervisors; and (ii) set realistic goals or make plans independently of others;
>
> (D) had moderate to marked limitation in her ability to (i) get along with co-workers or peers without distracting them or exhibiting behavioral extremes; (ii) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (iii) respond appropriately to changes in the work setting;
>
> (E) had marked to extreme limitation in her ability to (i) maintain attention and concentration for extended periods; (ii) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (iii) sustain an ordinary

routine without special supervision; (iv) work in coordination with or in proximity to others without being distracted by them; and

(v) interact appropriately with the general public; and

  (F) would be absent from work three days or more due to her impairments or related treatment.

(AR 562-63).

On May 6, 2010, Dr. Linda M. Smith, a board eligible psychiatrist, performed a Complete Psychiatric Evaluation of plaintiff which included a mental status evaluation. (AR 550-57). Based on her examination of plaintiff, Dr. Smith opined, in essence that (i) plaintiff had no limitations in her mental functioning; and (ii) any psychological symptoms plaintiff reported in the past occurred at a time when plaintiff was using methamphetamine. (AR 556-57). In a May 6, 2010 Medical Source Statement of Ability to do Work-Related Activities (Mental), Dr. Smith opined that plaintiff had no impairment in (i) her ability to understand, remember, and carry out instructions; (ii) her ability to respond appropriately to supervision, co-workers and work pressures in a work setting; and (iii) any other mental capability. (AR 558-59).

As noted above, at step two of the sequential evaluation process, the ALJ determined that plaintiff had a severe mental impairment of substance abuse induced mood disorder. (AR 223).

  **3. Analysis**

Plaintiff contends that a reversal or remand is warranted because the ALJ failed to find a severe mental impairment apart from substance abuse induced mood disorder. (Plaintiff's Motion at 6-13). Specifically, plaintiff argues that the ALJ's finding at step two is erroneous because Dr. Nguyen's 2009 opinions, which plaintiff alleges are supported by the 2008 evaluation notes, demonstrate that plaintiff has mental impairments unrelated to substance abuse which have more than a minimal effect on plaintiff's ability to work. (Plaintiff's Motion at 9-

13) (citing AR 440, 443, 562-63). The Court finds that the ALJ's step two findings are free from material error and are supported by substantial evidence.

Contrary to plaintiff's contention, Dr. Nguyen's 2009 opinions do not undercut the ALJ's findings at step two. First, the ALJ properly discounted the 2009 opinions in part because the level of treatment provided to plaintiff was inconsistent with the significant limitations found by Dr. Nguyen.[10] See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected a treating physician's opinion who prescribed conservative treatment and where the plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment). Plaintiff points to no evidence that she received inpatient care, or other intensive treatment. (AR 229). In fact, as Dr. Amado noted, a May 12, 2009 treatment record indicates that plaintiff "reported doing 'fine' on Zyprexa [and] Abilify." (AR 535) (citing AR 510); see Warre v. Commissioner of Social Security Administration, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.") (citations omitted).

Second, the ALJ properly discounted Dr. Nguyen's 2009 opinions in favor of the conflicting opinions of Dr. Smith (who concluded that plaintiff had no limitations in her mental functioning and suggested that to the extent plaintiff experienced psychological symptoms in the past, such symptoms were likely related to plaintiff's methamphetamine use), and the state reviewing physicians (each of whom concluded that plaintiff's mental impairment was "non-severe"). (AR 229, 499, 509, 524, 535, 556). The opinions of Dr. Smith were supported by her independent examination of plaintiff, and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating

---

[10] Even assuming, as plaintiff contends, that the ALJ's other reason for discounting the 2009 opinions (*i.e.*, that "Dr. Nguyen's opinions are not supported by any objective evidence") is invalid, the Court finds any error on that basis to be harmless.

physicians' opinions. See Tonapetyan, 242 F.3d at 1149; Andrews, 53 F.3d at 1041. The opinions of the state agency reviewing physicians also constitute substantial evidence supporting the ALJ's decision since they are consistent with the examining psychiatrist's opinions and underlying independent examination, as well as the other medical evidence in the record. See Tonapetyan, 242 F.3d at 1149 (holding that opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews, 53 F.3d at 1041 ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Finally, while plaintiff suggests that the record medical evidence reflects other mental impairments which have more than a minimal effect on her ability to work, this Court will not second-guess the ALJ's reasonable interpretation that it does not, even if such evidence could give rise to inferences more favorable to plaintiff.

Similarly, plaintiff fails to demonstrate that Dr. Nguyen's findings in the 2008 evaluation notes undercut the ALJ's step two determination.

First, contrary to plaintiff's argument, the ALJ did not err by failing expressly to address Dr. Nguyen's mental status examination and diagnostic impression that plaintiff had schizoaffective disorder – bipolar type from the 2008 evaluation notes. The ALJ was not required to discuss every piece of evidence in the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). Here, the ALJ accounted for all significant probative evidence of plaintiff's impairment and limitations. Reddick v. Chater, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ must "fully account[] for the context of materials or all parts of the testimony and reports"). The ALJ stated that he carefully considered "all the evidence" and "the entire record" in accordance with administration regulations. (AR 222-23). In his decision, the ALJ referenced

"treatment notes dated March 2008" in Exhibit 9F, which exhibit also contains the 2008 evaluation notes. (AR 228, 440, 443).[11] As noted above, the ALJ properly rejected Dr. Nguyen's 2009 opinions that plaintiff had significant limitations in her mental functioning based on specific and legitimate reasons supported by substantial evidence. (AR 26). Simply because the ALJ did not expressly discuss cumulative evidence in treatment notes which plaintiff argues lend support to the mental limitations expressed in Dr. Nguyen's 2009 opinions does not mean the ALJ failed to consider that evidence. See Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]"). Moreover, plaintiff points to no evidence that the isolated abnormal mental status examination and initial diagnostic impressions in the 2008 evaluation notes reflected any functional limitations that would last for a continuous twelve-month period.

      Second, any failure to account for the GAF score assigned in the 2008 evaluation notes does not constitute legal error. GAF scores, standing alone, are not determinative of the severity of mental impairments for purposes of social security disability claims. See 65 Fed. Reg. 50746, 50764-65 (August 21, 2000) ("[The GAF scale] does not have a direct correlation to the severity requirements in our mental disorder listings."); McFarland v. Astrue, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (ALJ's failure to address GAF scores specifically did not constitute legal error); see also Purvis v. Commissioner of Social Security Administration, 57 F. Supp. 2d 1088, 1093 (D. Or. 1999) (noting absence of Ninth Circuit authority presented to suggest that GAF score of 50, by itself, required finding of disability); Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002)

///

---

[11]Although the ALJ cites "Exhibit 9E" as the location of "[t]reatment notes dated March 2008," the medical records to which the ALJ refers are actually contained in Exhibit 9F. (AR 228, 439)

(rejecting claimant's argument that ALJ improperly failed to consider GAF score in assessing residual functional capacity).

Third, the 2008 evaluation notes reflect that Dr. Nguyen evaluated plaintiff during her initial visit to him, and at a point in time when plaintiff was not taking her prescribed medication. (AR 440) (noting that "[a]s per County policy, [a patient] needs to be established in treatment first [before a physician can complete a medical report form for a benefits application] . . . today is [plaintiff's] psych eval." and that plaintiff "ran out [of her medication] 'the day before yesterday.'"). In addition, the 2008 evaluation notes also reflect that Dr. Nguyen diagnosed plaintiff with "alcohol abuse." (AR 443). In light of the foregoing evidence, the ALJ's detailed and thorough discussion of the other record medical evidence related to plaintiff's mental condition, and the ALJ's rejection of the severe mental limitations in the 2009 opinions, it is reasonable to infer that the ALJ concluded that plaintiff's substance abuse materially contributed to Dr. Nguyen's findings during his initial evaluation of plaintiff, and therefore that such findings were not evidence that plaintiff suffered from any severe mental disorder that was unrelated to plaintiff's substance abuse. See Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at 751, 755.

Finally, even if the ALJ erred by not finding a severe mental impairment apart from substance abuse based on Dr. Nguyen's 2008 evaluation notes or 2009 opinions, any error was harmless as plaintiff points to no evidence that such medical records reflect any greater functional limits than those already accounted for in the ALJ's residual functional capacity assessment which limited plaintiff to routine, repetitive, entry level work that is minimally stressful with no contact with the public and only superficial interpersonal contact with co-workers and supervisors. (AR 225).

///
///

Accordingly, the ALJ's implicit determination at step two that plaintiff did not suffer from a severe mental impairment apart from a substance abuse induced mood disorder is supported by substantial evidence and is free from material error.

### C. The ALJ Properly Considered Plaintiff's Residual Functional Capacity

Plaintiff argues that the ALJ failed properly to assess plaintiff's residual functional capacity essentially because the ALJ did not include all limitations related to plaintiff's mental impairments assessed by Dr. Nguyen. (Plaintiff's Motion at 13-16). The Court disagrees. Since this claim is essentially derivative of plaintiff's arguments addressed in connection with plaintiff's second claim above (*i.e.*, that the ALJ erroneously failed to consider Dr. Nguyen's 2008 evaluation notes and 2009 opinions), it fails for the reasons discussed above. In short, the ALJ's residual functional capacity assessment is supported by substantial evidence and is free from material error.

## V. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 1, 2011

                                                  /s/
                                       Honorable Jacqueline Chooljian
                                       UNITED STATES MAGISTRATE JUDGE